IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION OF THE UNITED STATES OF AMERICA FOR THE SEARCH OF STORED ELECTRONIC DATA CONTAINED IN A BLACK APPLE IPHONE RECOVERED FROM RAPHAEL LAQUINN DANIELS | 4:20MJ24 |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Peter Gonzalves, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a search warrant for stored electronic data contained in a black Apple iPhone Cellular Telephone (the "Device"), taken from the person of Raphael DANIELS at the time he was arrested as part of a shooting investigation on May 14, 2020. The Device is currently in the custody of the Danville, Virginia Police Department and located in the Western District of Virginia.

2. I am a Special Agent with the Bureau of Alcohol Tobacco Firearms and Explosives ("ATF") and have been so employed since August 2016. I am currently assigned to the Bristol, Virginia Field Office. Prior to becoming an ATF Special Agent, I was a Special Agent with the US Department of State, Diplomatic Security Service for approximately six years. I have taken part in numerous federal, state, and local investigations concerning document and identity fraud, financial fraud, cyber crimes, and firearms and narcotics violations.

3. I am an investigative law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18 United States Code, and am empowered by law to conduct investigations and to make arrests for the offenses enumerated in Section 2516 of Title 18 United States Code.

4. During my tenure in law enforcement, I have become familiar with the methods and techniques associated with the distribution of narcotics, the laundering of drug proceeds and the organization of drug conspiracies. In the course of conducting these investigations, your affiant has been involved in the use of the following investigative techniques: interviewing confidential sources and cooperating witnesses; conducting physical surveillance; controlled buys; consensual monitoring and recording of both telephonic and non-telephonic communications; analyzing telephone pen register data; requesting, collecting and analyzing billing records; and conducting court-authorized electronic surveillance. Further, I have participated in the preparation, presentation and execution of numerous search and arrest warrants which have resulted in the recovery of weapons, narcotics, money and documentary evidence indicative of firearm and narcotic trafficking organizations. Additionally, I have assisted in investigations and arrests leading to convictions for violations of federal and state firearms and narcotics laws.

5. Through instruction and participation in investigations, I have become familiar with the manner and methods by which narcotics traffickers conduct their illegal business and the language and terms that are used to disguise conversations about their narcotics activities. From experience and training, I have learned, among other things, that in conversations narcotics traffickers believe susceptible to interception, they virtually never expressly refer to the illegal drugs by name; instead to conceal the true nature of their illegal activities and to thwart detection by law enforcement, they refer to the drugs and drug quantities using seemingly innocent terms.

6. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other law enforcement officers and witnesses.

This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

7. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that Raphael DANIELS has committed violations of Title 21 U.S.C. § 841(a) and 21 U.S.C. § 846. There is also probable cause to search the information described in Attachment A for evidence, contraband or fruits of these crimes, as described in Attachment B.

## PROBABLE CAUSE

8. During the period between October, 2019 and March 10, 2020, law enforcement conducted surveillance of 130 Colonial Court apartments 42 and 45 in Danville, Virginia. Investigators conducting surveillance routinely observed Kunta Daniels and Raphael DANIELS, who are cousins, together in apartment 45. Law enforcement did not observe activity consistent with a full time resident of apartment 45, but the persons most often observed at that apartment were Kunta Daniels and Raphael DANIELS. Additionally, surveillance showed Raphael DANIELS using a key to enter apartment 45 alone in November, 2019.

9. Apartment 45 is rented to D.R., an individual from New York. According to an interview of a former Colonial Court employee, D.R. does not appear to live in apartment 45 and Kunta Daniels pays the rent for apartment 45. Kunta Daniels was also found to have a key to apartment 45.

10. On March 10, 2020, investigators with the Danville, Virginia Police Department ("DPD") executed state search warrants on 130 Colonial Court apartments 42 and 45. In apartment 45, DPD investigators located distributable amounts of several controlled substances, including heroin, powder cocaine and cocaine base, several firearms and other evidence of narcotics distribution. Investigators observed Raphael DANIELS with

Kunta Daniels at apartment 45 earlier on the day of the search warrant, but neither individual was present in apartment 45 at the time investigators executed the search warrants. Later that day, Kunta Daniels was arrested based on the items seized pursuant to the search warrants.

11. Following the DPD search of 130 Colonial Court apartment 45, the complex owner entered apartment 45 and reported to law enforcement that she found an invoice from A1 Economy Glass directed to "Raphiel [sic] Daniels", 303 Freeze Rd., Danville, Virginia in a kitchen drawer.

12. During January-March 2020, investigators identified DANIELS' telephone number as a number registered to AT&T. During that time frame, DANIELS was in regular contact with Kunta Daniels, as well as with Joe Daniels, who is also related to DANIELS. Law enforcement has conducted multiple controlled purchases of cocaine and methamphetamine from Joe Daniels.

13. Within the few days after March 10, 2020, phone records for Joe Daniels showed that contact between Joe Daniels and DANIELS' old AT&T number ceased. Simultaneously, phone records indicated a Verizon number began contacting Joe Daniels and other known associates/relatives of DANIELS. Phone records related to this Verizon number showed similar volume and frequency of calls to Joe Daniels and other associates/relatives of DANIELS. Based on these call patterns, the timing of the change in number, and training and experience in drug investigations, investigators deduced that Kunta Daniels' arrest prompted DANIELS to switch his number to this Verizon number. Based on my training and experience, I know individuals involved in trafficking of controlled substances commonly change their phone numbers and mobile devices to avoid detection and surveillance by law enforcement.

14. During the first week of April, 2020, investigators conducted surveillance on 115 West Court in Danville, Virginia. Investigators observed an individual they

recognized as Raphael DANIELS entering and exiting the residence both alone and with other individuals. Based on DANIELS' movements, investigators concluded it is likely DANIELS is residing at this location. While conducting surveillance on this location, law enforcement has witnessed R.S., the individual listed on the utilities account for the house, and several children routinely in and out of the residence alone and with DANIELS.

15. On April 8, 2020, investigators conducting surveillance on 115 West Court observed a black Honda sedan arrive at the residence. Investigators observed the driver retrieve what appeared to be a plastic bag containing white powder from the trunk and place it in a backpack. The driver then carried the backpack inside the residence. Upon exiting the residence a short time later, the driver was still carrying the backpack. At that time, the backpack appeared to be unzipped and open. Just a few minutes later, Raphael DANIELS also exited the residence. In December of 2019, an unknown individual driving a very similar vehicle with the same license plate delivered approximately one ounce of methamphetamine to Joe Daniels during a controlled purchase in which a Confidential Informant ("CI")[1] purchased methamphetamine from Joe Daniels at 106 Druid Ct in Danville, VA.

16. In a series of interviews between November and December of 2019, the CI who conducted the above purchase from Joe Daniels stated to investigators that they believed Raphael DANIELS is a courier for the drug trafficking conspiracy for which Joe Daniels distributes. They further stated they heard DANIELS was bringing drugs into Danville from the Washington, DC area. The CI also stated they believed trafficking in drugs is a "family business," and the Daniels family also has ties to the New York area.

---

[1] This CI reliably conducted multiple controlled purchases. The CI is currently incarcerated for a probation violation. A different cooperating defendant told law enforcement that the CI had a previous sexual relationship with Joe Daniels and shares a child with him. The CI also has previous convictions for drug distribution, firearms offenses, theft, providing false ID to law enforcement, and contempt of court.

17. While conducting surveillance on 130 Colonial Court, investigators witnessed Raphael DANIELS driving several different vehicles registered to Enterprise Rent-a-Car. Enterprise records showed that all the vehicles driven by DANIELS were either rented by DANIELS or Shaniqua Martin. Publicly available Facebook information appears to indicate DANIELS and Martin had been in a relationship until recently. Enterprise records also indicated Martin exchanged rental vehicles on a monthly basis. Each of the rental vehicles had logged between approximately 2,000 – 8,000 miles during an approximately month long rental period.

18. On May 14, 2020, DPD officers and investigators responded to the 700 block of Wyllie Avenue in Danville for a report of shots fired. During the course of the investigation, officers developed Raphael DANIELS as the primary suspect in the shooting. Later that day, DPD investigators took DANIELS into custody in connection with the shooting investigation. Investigators recovered the Device from DANIELS' person at the time of the arrest and seized it in furtherance of the shooting investigation.

## **WIRELESS TELEPHONES**

19. Based on my training and experience, I use the following technical terms to convey the following meanings:

    a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and

storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device. The current generation of "smartphones" also provides the capability to employ Third Party Applications (apps) to provide additional messaging, voice communication, and media capabilities. The aforementioned data can also be located on a device contained within these apps.

21. Based on my training and experience, I know individuals engaged in distribution of illegal drugs and firearms need to communicate with suppliers and customers in order to further and facilitate the buying and selling of these goods. As in any other modern day business, there are several methods used to conduct these communications. Drug traffickers often use telephone calls, text messages, social media platforms and other third party messaging applications to conduct drug related communications. All these methods can be used on a single or multiple mobile devices such as cellular telephones, tablets, etc.

22. As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on cellular telephones seized because data on the Device can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Forensic evidence on a Device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw

conclusions about how electronic devices were used, the purpose of their use, who used them, and when. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process.

23. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer or wireless telephone is evidence may depend on other information stored on the device and the application of knowledge about how a device behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

24. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the Device to human inspection in order to determine whether it is evidence described by the warrant.

25. Because this warrant seeks only permission to examine a Device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

26. Based on the forgoing, I request that the Court issue the proposed search warrant.

Respectfully submitted,

s/ Peter Gonzalves
Special Agent Peter Gonzalves
Bureau of Alcohol, Tobacco, Firearms, and Explosives
United States Department of Justice

Sworn and attested to telephonically.

Subscribed and sworn to before me on _____May 20,_____, 2020

*Robert S. Ballou*
HONORABLE JUDGE ROBERT S. BALLOU
UNITED STATES MAGISTRATE JUDGE IN THE
WESTERN DISTRICT OF VIRGINIA

# ATTACHMENT A

The property to be searched is a black Apple iPhone Cellular Telephone, hereinafter "The Device." The Device was seized from the person of Raphael Laquinn DANIELS at the time of his arrest on May 14, 2020. The Device contains no exterior serial number or individually identifying information, but has some exterior cracks on the lower corner of the back case. The Device is currently located at the Danville Police Department in Danville, VA, which is within the Western Judicial District of Virginia.

This warrant authorizes the forensic examination of the Device and stored electronic data contained therein for the purpose of identifying the electronically stored information described in Attachment B.

# **ATTACHMENT B**

1. All records on The Device described in Attachment A that relate to violations of Title 21 U.S.C. § 841(a) and 21 U.S.C. § 846, and involve Raphael DANIELS, including:

   a. lists of customers or suppliers, their phone numbers or social media identifiers, and related identifying information;
   b. types, amounts, and prices of drugs or firearms trafficked as well as dates, places, and amounts of specific transactions;
   c. any information related to sources of drugs or firearms (including names, addresses, phone numbers, or any other identifying information) and transactions with sources;
   d. any information related to narcotics customers (including names, addresses, phone numbers and related identifying information) and transactions with customers;
   e. communications regarding drug or firearms transactions;
   f. communications regarding a conspiracy to distribute drugs or firearms; and
   g. Text messages, phone calls or third party application data, including photographs or videos, relating to the distribution of controlled substances, firearms, violent crimes and any conspiracy to distribute controlled substances or firearms;

2. Evidence of user attribution showing who used or owned The Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, third party application data and browsing history.